UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
EMPIRE UNITED LINES CO. INC.,                                :
                                                             :
                          Plaintiff,                         :  **MEMORANDUM DECISION**
                                                             :  **AND ORDER**
            - against -                                      :
                                                             :  21-cv-04274 (BMC)
ALEKSANDER FELDMAN, ELLA FELDMAN,                            :
ATLANTIC TRANSPORT & LOGISTICS, LLC,                         :
JAVID JAFAROV, ODIL ISKANDAROV, AUTO                         :
GLOBAL LLC, MIKHEIL DODASHVILI,                              :
EXOTIC CARS MMDT, INC., LUCKY AUTO                           :
INC., LEVAN KUKHALASHVILI, LTD                               :
AUTOMOBILI, NOSIRDJON SATOROV, and                           :
USA AUTO BUSINESS EXPORT, INC.                               :
                                                             :
                          Defendants.                        :
                                                             :
------------------------------------------------------------ X

**COGAN**, District Judge.

Plaintiff Empire United Lines Co. Inc. brings this action against multiple defendants alleging (1) a substantive violation of the Racketeer Influenced and Corrupt Organizations Act pursuant to 18 U.S.C. § 1962(c); (2) conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d); and (3) New York state law claims of conversion, tortious interference with contract, tortious interference/breach of duty/conspiracy, breach of maritime contracts, fraud in the inducement, and aiding and abetting breach of duty. Before me are two motions to dismiss filed by two sets of defendants: (1) Aleksander Feldman, Ella Feldman, and Atlantic Transport & Logistics LLC ("ATL") (collectively, "the Feldman defendants"); and (2) Mikheil Dodashvili and Exotic Cars MMDT, Inc. ("Exotic Cars") (collectively, "the Dodashvili defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).

Plaintiff has alleged an archetypal RICO scheme. Aleksander Feldman was running a clandestine business – a RICO enterprise – within plaintiff's business for years, the purpose of which was to skim plaintiff's profits and corrupt and misappropriate plaintiff's customers. When he was found out, Feldman continued the scheme under another corporate umbrella. Each of the other defendants had overall knowledge of the scheme and their particular role in furthering it. On plaintiff's allegations, the defendants' predicate RICO acts cannot reasonably be challenged. Defendants' motions are accordingly denied.

## SUMMARY OF THE AMENDED COMPLAINT

The factual allegations of the amended complaint are deemed true for purposes of this motion. Plaintiff alleges that defendants conducted a multi-year racketeering scheme in violation of RICO through the predicate acts of mail fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343; transport and receipt of stolen money, 18 U.S.C. §§ 2314 and 2315; and violation of the anti-money laundering statute, 18 U.S.C. § 1956.

Plaintiff is a maritime-industry company based in Brooklyn that purchases space on commercial ships and resells that space to customers. It engages in interstate and international commerce by participating in the shipment of cars from the United States to overseas destinations. Most of the shipments in question involve used cars exported by car dealers to Eastern Europe and the Caucasus.

From approximately August 2017 through September 2019, Mikheil Dodashvili, a Brooklyn-based car dealer who used plaintiff's services, and his entity, Exotic Cars MMDT, Inc., "work[ed] with the Feldman defendants] . . . to defraud the plaintiff of shipping fees."[1] This

---

[1] The Dodashvili defendants' motion seeks to dismiss plaintiff's claims against Mikheil Dodashvili and Exotic Cars MMDT, Inc., but does not mention "Lucky Auto." The amended complaint alleges that Lucky Auto "is a car dealer owned and controlled by Dodashvili without corporate formalities," located in Delaware. At the premotion

scheme worked as follows: first, Mikheil Dodashvili would line up a purchaser overseas; second, Mr. Feldman would use his authority as an employee for plaintiff to purchase space on a cargo ship in plaintiff's name; third, Mr. Feldman would release the vehicle to the car dealer's agents when the vehicle was delivered; fourth, Mr. Feldman would delete any record of the shipment from plaintiff's records and hide the costs of the transaction by using another paying client's funds; and finally, the car dealer would pay Mr. Feldman or his wife directly via check or cash. Plaintiff would either receive no money or an amount that would not cover the costs associated with its services.

Annexed to the amended complaint are documents that provide a clear example of how the scheme operated. One of the documents is a list of approximately 800 cars that were shipped even though plaintiff was never paid, or only partially paid, for these services. One of the vehicles on this list is a 2006 Toyota Highlander with Vehicle Identification Number ("VIN") JTEEW21A660011905. According to plaintiff's records, it unknowingly paid $1,050.00 to ship this vehicle to Batumi, Georgia – the Country not the State. It never received any money from Dodashvili for doing this. Also attached to plaintiff's amended complaint is a $550 check from Exotic Cars MMDT, Inc. (again, a company owned by Dodashvili) to "A. Feldman." The check is signed by an "M. Doda." In the check's memo field is the statement "06 Toyota Highlander VIN 011905" – the last six digits of the Toyota Highlander that plaintiff never knew it had paid $1,050.00 to ship.

Mr. Feldman engaged in this type of activity with multiple car dealers like Dodashvili during the two years plaintiff employed him. Overall, plaintiff lost over $500,000 from the

---

conference, the Court asked counsel for the Dodashvili defendants if Lucky Auto was related to Dodashvili. The question was never answered as the Dodashvili defendants stopped cooperating with their counsel, and the Court granted counsel's motion to withdraw. This decision treats Lucky Auto as having moved to dismiss along with the other Dodashvili defendants.

scheme and Mr. Feldman made over $200,000 per year between September 2017-2019, compared to his annual salary of approximately $34,000.

After plaintiff's accountant discovered unusual losses in September 2019, plaintiff undertook an internal audit. When plaintiff confronted Mr. Feldman about the missing payments in September 2019, he claimed that he was ill and, from that point, ceased appearing at work. Plaintiff alleges, however, that Mr. Feldman continued to manipulate Empire's computer systems through October 2019 in furtherance of the scheme, in addition to working with the Dodashvili defendants and the other car dealer defendants to conceal the scheme. Mr. Feldman also continued the scheme at his new employer, TRT, through at least 2021, and improperly induced plaintiff's customers to switch their business to TRT in furtherance of the continued scheme. When plaintiff confronted several car dealers requesting proof of payment for released cars in October 2019, certain customers explained that they paid Mr. Feldman, Ella Feldman, ATL, or third parties at the direction of the Feldmans. The full scope of the scheme is still unknown because Mr. Feldman deleted many of the computerized shipping records.

The Feldman defendants have moved to dismiss plaintiff's amended complaint under rule Fed. R. Civ. P. 12(b)(6), and for the court to decline supplemental jurisdiction. The Dodashvili defendants moved to dismiss pursuant to Rule 12(b)(6) as well.

## DISCUSSION

### I. The Enterprise

The activities the amended complaint attributes to the Exotic Cars/Lucky Auto Enterprise and the ATL Enterprise are part of a single association-in-fact RICO scheme.

A RICO "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal

4

entity." 18 U.S.C. § 1961(4). However, "[f]or RICO purposes, simply establishing the presence of an enterprise is not enough." Flexborrow LLC v. TD Auto Finance LLC, 255 F. Supp. 3d 406, 415 (E.D.N.Y. 2017). Section 1962(c) requires that the defendant "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). In Reves v. Ernst & Young, 507 U.S. 170, 183 (1993), the Supreme Court interpreted this statutory language to mean that a RICO defendant is not liable under § 1962(c) "unless one has participated in the operation or management of the enterprise itself." "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." Id. at 179. Thus, a plaintiff must sufficiently allege "(1) the existence of a RICO enterprise and (2) that the defendant conducted the affairs of the enterprise." Moss v. BMO Harris Bank, N.A, 258 F. Supp. 3d 289, 297 (E.D.N.Y. 2017) (citation omitted).

A "RICO enterprise may either be a lawful entity or an association-in-fact, the latter of which refers to a group of persons associated together for a common purpose of engaging in a course of conduct." See Boritzer v. Calloway, No. 10-cv-6264, 2013 WL 311013, at *5 (S.D.N.Y. Jan. 24, 2013) (citation omitted). Association-in-fact enterprises are "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The participants in an association-in-fact enterprise "must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." New York v. United Parcel Serv., Inc., No. 15-cv-1136, 2016 WL 4203547, at *3 (S.D.N.Y. Aug. 9, 2016); see Moss, 258 F. Supp. 3d at 299. This "common purpose element requires that the enterprise's members have had a common intent to violate RICO or to act unlawfully." Black v. Ganieva, No. 21-cv-8824, 2022 WL 2374514, at *13 (S.D.N.Y. June 30, 2022). The Supreme Court has held that "an association-in-fact enterprise must have at least three structural features: a purpose,

relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. U.S., 556 U.S. 938, 946 (2009); see Moss, 258 F. Supp. 3d at 298.

> Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods – by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.

Boyle, 556 U.S. at 947.

During his two years with Empire, Aleksander Feldman facilitated orders, coordinated shipping logistics, communicated with clients, and collected payments on behalf of Empire. During that same time, the defendant car dealers worked with Mr. Feldman to use his position to steal plaintiff's services. The Dodashvili defendants and the other car dealer defendants sent checks, wired money, and gave cash to Mr. Feldman, Ella Feldman, or ATL. In exchange for that money, Mr. Feldman ensured the car dealers did not pay plaintiff the full price to have their merchandise shipped. These allegations form the basis of what plaintiff calls the "ATL Enterprise." But, in fact, all the defendants functioned as part of a single enterprise, which operated with the goal of defrauding plaintiff.

Dodashvili and the companies he controlled were clearly members of this scheme. These defendants worked closely with the Feldman defendants to use plaintiff's services without paying for them or only paying unauthorized cut prices. Like the other car dealer defendants in this case, the amended complaint points to text messages between Dodashvili and Aleksander Feldman, ATL's involvement with the shipping logistics, deposits from Dodashvili into Ella Feldman's personal bank account, checks from Exotic Cars written in the name of "A. Feldman," and deliveries of cash from Dodashvili to the Feldmans' home mailbox.

6

These allegations are sufficiently particular to show that an on-going association in fact enterprise existed among Mr. Feldman, Ella Feldman, ALT, the Dodashvili defendants, and the other car dealer defendants.  See Moore v. PaineWebber, Inc., 189 F.3d 165, 172-73 (2d Cir. 1999) ("Federal Rule of Civil Procedure 9(b) states that in averments of fraud, 'the circumstances constituting fraud . . . shall be stated with particularity.'  This provision applies to RICO claims for which fraud is the predicate illegal act.").  The activity of these defendants demonstrates that they committed the alleged predicate acts over this more than two-year-long scheme and plaintiff was the intended victim.

## II.     The Feldman Defendants' Arguments for Dismissal

The Feldman defendants argue that (1) the amended complaint is deficient in respect to RICO claims against Ella Feldman; (2) the amended complaint fails to sufficiently allege continuity, and (3) the amended complaint failed to join indispensable parties.  None of these positions have merit.

### A.  Ella Feldman

The Feldman defendants argue that plaintiff has failed to state a viable RICO claim against Ella Feldman because the alleged contribution of her bank account for the benefit of the RICO enterprise is insufficient to impose liability on her.  The Feldman defendants argue that RICO requires more than merely providing services to an enterprise, pointing to the Reves "operation or management" test.

The amended complaint alleges that Ella Feldman was the owner of ATL along with her husband.  As ATL is alleged to be a RICO enterprise that "operated for the sole purpose of defrauding shipping companies," this accusation warrants further discovery into Ella Feldman's role within ATL.  "In [the Second] Circuit, the 'operation or management' test typically has

7

proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004); see U.S. v. Allen, 155 F.3d 35, 42-43 (2d Cir. 1998) (the question of whether defendant "operated or managed" the affairs of an enterprise is essentially one of fact). "[W]here the role of the particular defendant in the RICO enterprise is unclear, plaintiffs may well be entitled to take discovery on this question." AIU Ins. Co. v. Olmecs Med. Supply, Inc., No. 04-cv-2934, 2005 WL 3710370, at *8 (E.D.N.Y. Feb. 22, 2005). It is perfectly plausible that Ella Feldman had a role in conducting the affairs of her own company, even if the company was primarily directed by her husband. The amended complaint alleges that Ella "directed shippers to make payments in cash or into her account on behalf of the enterprise."

The amended complaint further alleges that Dodashvili deposited cash into Ella Feldman's account on July 29, 2019, and September 12, 2019, "knowing [these] funds belong to plaintiff." It also alleges that "Ella Feldman aided and abetted Aleksander Feldman to interfere with plaintiff's contracts with its customers by allowing her husband to use her bank account to steal the payments from the customers that should have been made to plaintiff . . . ." The amended complaint also exhibits text messages between Aleksander Feldman and defendant car dealers. In these messages, Alexander provides car dealers with Ella Feldman's TD bank account information, and the dealers reply to Alexander with a receipt showing a successful funds transfer into Ella Feldman's account.

The use of Ella Feldman's TD bank account is central to many of the alleged predicate acts, including wire fraud, transport and receipt of stolen money, and money laundering. In addition, the amended complaint alleges that cash was delivered to the Feldmans' mailbox at their home in Brooklyn. Ella Feldman's role in providing her bank account, and potentially

8

funneling cash deliveries from her mailbox, allowed ATL to divert money in a covert manner to evade discovery. The standard for stating a plausible claim does not require the Court to ignore not only plausible, but probable inferences from the allegations.

The charge of conspiracy to violate RICO, § 1962(d), against Ella Feldman presents an even lower pleading burden. See Satinwood, 385 F.3d at 178. To establish a RICO conspiracy claim, "a plaintiff must demonstrate that each defendant 'knew about and agreed to facilitate' a pattern of racketeering activity." Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC, No. 11-cv-7801, 2012 WL 1231775, at *8 (S.D.N.Y. April 12, 2012) (quoting Baisch, 346 F.3d at 377). For a RICO conspiracy, the Second Circuit has instructed that "a plaintiff must prove that (i) the defendants agreed to form and associate themselves with a RICO enterprise" and "(ii) the defendants agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." Elsevier, Inc. v. Grossman, No. 12-cv-5121, 2013 WL 6331839, at *11 (S.D.N.Y. Dec. 5, 2013); see Flexborrow, 255 F. Supp. 3d at 425. "Because a conspiracy – an agreement to commit predicate acts – cannot by itself cause any injury . . . Congress presupposed injury-causing overt acts as the basis of civil standing to recover for RICO conspiracy violations." Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990). The allegations that Dodashvili deposited cash into Ella Feldman's account on July 29, 2019, and September 12, 2019, in exchange for Mr. Feldman defrauding plaintiff, meet this overt act requirement.

### B. Continuity as Applied to the Feldman Defendants

The Feldman defendants argue that the amended complaint does not sufficiently plead the continuity requirement of RICO. "To establish a RICO pattern, it must [ ] be shown that the predicate [acts] themselves amount to, or that they otherwise constitute a threat of, continuing

9

racketeering activity." H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 240 (1989). "Predicate acts are 'related' for RICO purposes when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997) (quoting H.J. Inc., 492 U.S. at 240).

> 'Continuity' is both a closed- and open- ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition . . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.

H.J. Inc., 492 U.S. at 241-42 (citation omitted).

Plaintiff offers viable theories for both close-ended and open-ended continuity. Starting with the former, the amended complaint alleges that the Feldman defendants operated their scheme from August 2017 through at least October 2019. See generally DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001) ("Since the Supreme Court decided H.J. Inc., [the Second Circuit] has never held a period of less than two years to constitute a 'substantial period of time'" for purposes of closed-ended continuity.). "While closed ended continuity is primarily concerned with the time period of the activities, the court also considers factors such as the 'number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes' as relevant when determining whether closed ended continuity exists." SKS Constructors, Inc. v. Drinkwine, 458 F. Supp. 2d 68, 78 (E.D.N.Y. 2006) (quoting DeFalco, 244 F.3d at 321). As already stated, the amended complaint alleges a vast number of racketeering activities, including multiple acts of fraud amounting to $500,000 in losses, at least one predicate

10

act of mail and wire fraud, transportation and receipt of stolen money, and the unlawful use of plaintiff's services to transport approximately 800 cars. This is sufficient to show close ended continuity and survive a motion to dismiss.

Plaintiff also correctly alleges that the Feldman defendant's scheme had open-ended continuity. "To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). Using the information it has,[2] plaintiff maintains that Mr. Feldman continued to conduct illegal activities with the defendant car dealers after he was fired from Empire. Not only does the amended complaint allege that the Feldman defendants corresponded with the defendant car dealers to cover up the scheme, it also alleges that they continued the scheme at Mr. Feldman's next employer, TRT, another shipping company. Although the Feldman defendants argue that plaintiff lacks standing for any continued scheme at Mr. Feldman's new employer, the amended complaint alleges that Mr. Feldman promised to pay car businesses stolen money in exchange for switching their business from plaintiff to ATL and TRT. That is plenty for standing purposes.[3]

### III. The Dodashvili Defendants' Arguments for Dismissal

The Dodashvili defendants argue that the amended complaint (1) fails to allege continuity; (2) fails to allege horizontal relatedness between movants and co-defendants; (3) fails to allege vertical relatedness in that the Dodashvili defendants did not direct, manage, conduct,

---

[2] The amended complaint alleges that the full extent of the scheme has not been fully identified because Aleksander Feldman deleted pertinent records and defendants refuse to cooperate in providing information about their past shipments with plaintiff. The Court has already seen the Feldmans' obstructive actions during discovery in this case.

[3] The Feldman defendants also assert that three car dealers belonging to another defendant, Javid Jafarov, were indispensable parties. The one-paragraph argument does not explain why they are even necessary parties let alone indispensable ones.

11

or participate in the control of Empire; and (4) does not set forth sufficient allegations for a conspiracy to violate the federal RICO statute.

### A. Continuity as Applied to the Dodashvili Defendants

The amended complaint alleges that the Exotic Cars/Lucky Auto Enterprise operated for a period of more than two years, from August 2017 through October 2019. The amended complaint alleges that this enterprise shipped approximately 144 cars through plaintiff during the two-year period in question, and diverted payments, which totaled over $90,000 for these services, to ATL. In fact, the amended complaint alleges that Dodashvili admitted the scheme to Empire's principal and repaid some monies owed to plaintiff.

Additionally, plaintiff has provided specific allegations of cars that Mr. Feldman shipped on behalf of Dodashvili using plaintiff's services. The amended complaint claims that the Dodashvili defendants deposited money into Ella Feldman's bank account on July 29, 2019, and September 12, 2019, left cash in the Feldmans' mailbox on July 21, 2018, and wrote several checks made out to "A. Feldman" and related third-party entities. The amended complaint also states that Dodashvili refused to provide information regarding the total number of cars shipped through plaintiff, prohibiting further confirmation of the total period in question. The amended complaint sufficiently pleads the requisite two-year period of continuity that is often cited by courts, DeFalco, 244 F.3d at 321, in addition to consideration of the number and variety of predicate acts involved. That is adequate for purposes of continuity.

### B. Horizontal and Vertical Relatedness as Applied to the Dodashvili Defendants

"The requirement of 'relatedness' embodies two different concepts. The racketeering acts must be related to each other ('horizontal' relatedness) and they must be related to the enterprise ('vertical' relatedness)." U.S. v. Minicone, 960 F.2d 1099, 1106 (2d Cir. 1992).

Regarding horizontal relatedness, the Dodashvili defendants argue that their acts were not connected to the other car dealer defendants. However, there is no requirement that the acts of individual car dealers must be connected to each other. Rather, it is sufficient that the Dodashvili defendants worked with the Feldman defendants to repeatedly defraud plaintiff over a two-year period. Regarding vertical relatedness, the amended complaint does not allege that Dodashvili directed, managed, conducted, or participated in the control of Empire, as characterized by the defendants' motion to dismiss.[4] What the amended complaint actually says is that Dodashvili and his companies worked with the Feldman defendants as part of an association-in-fact enterprise created to defraud Empire.

For claims alleging fraud, Rule 9(b) imposes a heightened pleading standard; such claims must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a complaint must "allege facts that give rise to a strong inference of fraudulent intent." Berman v. Morgan Keegan & Co., 455 F. App'x 92, 95 (2d Cir. 2012) (quoting Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995)). The Dodashvili defendants argue that "there is nothing pled by plaintiff describing how any of the banking communication transactions made by the moving defendants stated in the amended complaint involved any knowledge that the defendants Feldman/Atlantic were engaged in unlawful activity." But the amended complaint provides a date range, a total number of vehicles, the total cost, text exchanges where Mr. Feldman instructed these defendants on how to pay him, and images of checks from exotic cars

---

[4] "To show that the predicate acts are vertically related to the RICO enterprise, the [plaintiff] must establish (1) that the defendant 'was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise,' or (2) that 'the predicate offenses are related to the activities of that enterprise." U.S. v. Daidone, 471 F.3d 371, 375 (2d Cir. 2006) (quoting Minicone, 960 F.2d at 1106).

13

to the Feldmans, some of which have specific VIN numbers that match those on a spreadsheet of cars plaintiff shipped without payment.

This pattern of activity is sufficiently specific to support the inference that Dodashvili knew he was defrauding plaintiff. It is hard to imagine a scenario where any of the defendants believed that paying Mr. Feldman, his wife, or some other company far less money than normal shipping rates would not be tied to some type of fraud. Under Rule 9(b), a complaint raises "a strong inference of fraudulent intent" by either (1) "alleg[ing] a motive for committing fraud and a clear opportunity for doing so" or (2) "identifying circumstances indicating conscious behavior by the defendant." Powers v. British Vita, P.L.C., 57 F.3d 176, 184 (2d Cir. 1995) (citations omitted). Mr. Feldman's suspicious requests for direct payment would have made any reasonable merchant concerned for the safety of their goods unless that merchant was aware of how Mr. Feldman's scheme was designed to defraud plaintiff. In addition, stuffing envelopes full of cash into the Feldmans' home mailbox could hardly be clearer evidence of a conscious pattern of behavior designed to commit fraud and evade detection.

### C. Conspiracy to Violate Federal RICO as Applied to the Dodashvili Defendants

Finally, the Dodashvili defendants argue that the amended complaint does not set forth sufficient allegations for a Conspiracy to Violate Federal RICO laws, 18 U.S.C. § 1962(d). Although defendants argue that the amended complaint did not establish a "meeting of the minds" to show that Dodashvili knew that his dealings with the Feldmans were unlawful, his behavior suggests otherwise. Again, what legitimate businessman stuffs envelopes full of cash into somebody else's mailbox, or makes out checks to the wife of an employee with which he is dealing? For the same reasons that the amended complaint sufficiently pled facts with enough

14

specificity to sustain Rule 9(b)'s requirements, the amended complaint has pled sufficient facts to sustain a RICO conspiracy claim.

## CONCLUSION

Defendants' motions to dismiss are denied.

SO ORDERED.

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
      September 7, 2022