UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
EMPIRE UNITED LINES CO., INC.,                          :
                                                        :
                        Plaintiff,                      :
                                                        :
        -against-                                       :   MEMORANDUM AND ORDER
                                                        :
ALEKSANDER FELDMAN, ELLA FELDMAN,                       :   No. 21-CV-4274-JRC
ATLANTIC TRANSPORT & LOGISTICS, LLC,                    :
JAVID JAFAROV, ALEKSANDER PISMAN,                       :
DIAMANTE LEASING, ODIL ISKANDAROV, AUTO                 :
GLOBAL LLC, MIKHEIL DODASHVILI, EXOTIC                  :
CARS MMDT, INC., LUCKY AUTO, INC., LTD                  :
AUTOMOBILI, AND AUTOMOBILI LIMITED                      :
COMPANY,                                                :
                                                        :
                        Defendants.                     :
                                                        :
------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

        On March 14, 2024, Eduardo Glas ("Glas"), former counsel for plaintiff Empire United

Lines Co., Inc. ("Empire" or "plaintiff"), filed a motion seeking to "create a charging lien" and

requesting that the Court "determine the extent of the lien," Dkt. 165-1, after plaintiff had settled its

claims against defendants Aleksander Feldman, Ella Feldman and Atlantic Transport & Logistics,

LLC (collectively, the "Feldman Defendants").  Specifically, Glas seeks a charging lien in the

amount of one-third of the confirmed settlement amount of $475,000 between plaintiff and the

Feldman Defendants.  *See* Motion to Establish Charging Lien, Dkt. 165.  For the reasons that

follow, the Court grants the motion to fix a charging lien in the amount of one-third of the

settlement with the Feldman defendants.[1]

---

[1] The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(b).  *See* Dkt. 157.
In its opposition, plaintiff objects to the undersigned addressing the dispute since the undersigned
"conducted various settlement [conferences] with the parties present and participating."  Opposition
to Lien ("Pl. Opp.") ¶ 16, Dkt. 179.  Section 455(a) provides that "[a]ny . . . magistrate judge of the
United States shall disqualify himself in any proceeding in which his impartiality might reasonably
be questioned."  28 U.S.C. § 455(a); *see ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98,
107 (2d Cir. 2012).  "[O]pinions formed by the judge on the basis of facts introduced or events

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed unless otherwise noted.

On or about May 5, 2021, after being contacted by plaintiff's principal, Michael Hitrinov ("Hitrinov"), Glas sent an email to plaintiff attaching a retainer agreement. Glas Cert. ¶ 2, Dkt. 165-2 and Ex. A, Dkt. 165-3. Based on the terms of the retainer agreement, plaintiff retained Glas "in connection with an action against Alex Feldman, Ella Feldman, and Atlantic Transport & Logistic to recover approximately $450,000 that the Feldmans and Atlantic Transport & Logistic embezzled from [plaintiff]." Retainer Agreement, Dkt. 165-3 at ECF page[2] 3. The retainer agreement further provides that Glas would represent plaintiff on a contingency basis for "one third (1/3) of such recoveries." *Id.*; *id.* at ECF page 5 ("a contingency fee of one-third (1/3) of all the recoveries obtained in your behalf"). Regarding the costs of suit, the retainer agreement expressly provides as follows: "All costs and expenses associated with this work will be borne by [plaintiff]. Costs include the court filing fees, photocopies, courier costs, etc. If no recoveries result from our representation, you will not have to pay any fees to my firm." *Id.* at ECF page 3; *id.* at ECF page 5

---

occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Importantly, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* "Movants must overcome a presumption of impartiality, and the burden for doing so is substantial." *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emus, Int'l Union*, 332 F. Supp. 2d 667, 670 (S.D.N.Y. 2004) (internal quotation marks and citations omitted). Here, plaintiff has not identified any colorable basis for recusal or suggested bias or partiality. Thus, plaintiff has not carried its substantial burden to warrant recusal. *See Omega Eng'g Inc., v. Omega, S.A.*, 432 F.3d 437, 447-48 (2d Cir. 2005) (finding that magistrate judge who oversaw settlement conference did not abuse his discretion in declining to recuse himself from deciding motion to enforce settlement); *Can't Stop Prods., Inc. v. Sixuvus, Ltd.*, No. 17-CV-6513, 2019 WL 245046, at *2 (S.D.N.Y. Jan. 18, 2019) (denying recusal motion based on comments made by magistrate judge at settlement conference).

[2] References to the page numbers generated by the Court's electronic case filing system appear as "ECF page."

("Expenses will be your responsibility to pay."). Glas' cover email attaching the retainer agreement stated, "If ok, pls sign and return by email." *Id.* at ECF page 2. On the same day, plaintiff replied by email: "Thank you. I agree in principle. But prior to moving forward let's agree on scope of allegations, requested recovery amount, venue, defending parties. At least in general." *Id.* On May 25, 2021, Glas provided Hitrinov with a copy of a draft complaint and asked Hitrinov to send back the signed retainer letter. *See* Dkt. 165-4.

On June 2, 2021, Hitrinov sent Glas an email requesting as follows: "Please send me the amendment [sic] complaint and retainer to sign." *See* Dkt. 165-5. In response, on the same day, Glas sent a copy of the identical retainer agreement by email. *See id.*

On July 30, 2021, Glas filed the complaint in this action. *See* Dkt. 1. Hitrinov never signed the retainer letter. *See* Glas Cert. ¶ 9. Nonetheless, Glas represented plaintiff throughout the instant litigation. During the course of the litigation, plaintiff reimbursed Glas' firm for all expenses the firm paid in connection with this case. *See* id. & Ex. D, Dkt. 165-6. For those vendors to which larger expenditures were owed, such as interpreters and a forensic expert, plaintiff paid directly, as provided in the retainer letter. *See* Glas Cert. ¶ 9; Retainer Agreement, Dkt. 165-3 at ECF page 5 ("Some large disbursements may be forwarded to you for direct payment.").

When plaintiff settled with defendant Aleksander Pisman, and later with defendant Javid Jafarov, Glas received one-third of the proceeds of those settlements without any deductions for costs. *See* Glas Cert. ¶¶ 10, 11. In connection with the latter settlement, plaintiff paid the outstanding expenses for transcripts and witnesses' trial subpoena fees from plaintiff's share of the Jafarov settlement proceeds. *See* id. ¶ 11 & Ex. E, Dkt. 165-7.

With respect to the Feldman Defendants, the settlement agreement with them provides for an initial payment of $300,000 followed by payment of an additional $175,000 in 24 equal monthly installments, commencing on May 5, 2024. *See* Settlement Agreement, Dkt. 164. After the

3

settlement was reached with the Feldman Defendants, plaintiff objected to the amount Glas claimed as his attorney's fee.  *See* Glas Cert. ¶¶ 12-14.  On February 17, 2024, referencing the unsigned retainer agreement, plaintiff wrote as follows:  "I agreed in principal [sic] meaning the principle of contingency and not exact economic.  If we agreed we would sing [sic].  But we kept it open.  It is not signed by you or by me or by anybody."  Dkt. 165-8.

As an initial matter, plaintiff argues that the Court lacks subject matter jurisdiction to hear this dispute.  *See* Pl. Opp. Mem. at 2-3, Dkt. 179-1.  Alternatively, plaintiff argues that because it would have been justified in terminating Glas for cause, plaintiff should not owe Glas any attorney's fees.  *Id.* at 3.  In the event the Court finds that Glas is entitled to attorney's fees, plaintiff requests discovery and a trial.  *Id.* at 4.  Further, if Glas is owed attorneys' fees, plaintiff further contends that plaintiff and Glas agreed to deduct expenses from any gross settlement amount before calculating the one-third contingency fee, pursuant to a modified retainer agreement.  *Id.* at 1-2.  Finally, plaintiff argues that if all of these arguments fail, the Court should determine Glas' fee according to the terms of the unsigned retainer agreement, rather than on a *quantum meruit* basis.  *Id.* at 5.

Here, the Court finds that Glas secured a settlement with the Feldman Defendants with plaintiff's authorization.  In light of the settlement, the case has resolved and Glas' services to plaintiff have been substantially completed.  The Court, therefore, finds that Glas shall recover one-third of the settlement proceeds pursuant to the terms of the unsigned retainer agreement, and the Court need not consider the alternative quasi-contractual remedy of *quantum meruit*.  The Court imposes a charging lien in the amount of one-third of the proceeds of the settlement with the Feldman Defendants, pursuant to section 475 of the New York Judiciary Law.

## DISCUSSION

Section 475 of the New York Judiciary Law provides that an "attorney who appears for a

party has a lien upon his or her client's cause of action, . . . which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come." N.Y. Judiciary Law § 475.[3] "A charging lien gives the attorney an equitable ownership interest in the client's cause of action and ensures that he can collect his fee from the fund he has created and obtained on behalf of his client." *DeCastro v. Kavadia*, No. 12-CV-1386, 2018 WL 4771528, at *3 (S.D.N.Y. Oct. 3, 2018); *see Yu v. Kotobuki Rest., Inc.*, No. 17-CV-4202, 2024 WL 1259427, at *2 (E.D.N.Y. Mar. 25, 2024). "[B]ecause a cause of action is a species of property, an attorney acquires a vested property interest in the cause of action at the signing of the retainer agreement and thus a title to property and rights to property." *LMWT Realty Corp. v. Davis Agency Inc.*, 85 N.Y.2d 462, 467 (N.Y. 1995) (internal quotation marks and citation omitted).

A.    Section 475 Applies to the Instant Dispute

As a preliminary matter, plaintiff argues that the Court lacks jurisdiction over the fee dispute for various reasons. First, plaintiff argues that Judiciary Law § 475 does not apply because plaintiff never discharged Glas. *See* Pl. Opp. Mem. at 2 ("All cases involving NYS Judiciary Law § 475 found by the undersigned are by an attorney seeking the charging lien who was discharged by its client.").[4] However, courts have routinely held that an attorney, who has completed the

---

[3] Section 475 "governs attorneys' charging liens in federal courts sitting in New York." *Khudai v. Akami Techs.*, No. 20-CV-3686, 2023 WL 7174616, at *3 (S.D.N.Y. Nov. 1, 2023), *report and recommendation adopted*, 2024 WL 2046052 (S.D.N.Y. May 8, 2024).

[4] Interestingly, plaintiff also argues that Glas is not entitled to a charging lien because even though plaintiff did not discharge Glas, plaintiff "would have been within its rights to" do so. *See* Pl. Opp. Mem. at 3. The Court is unaware of any authority where an attorney, who has completed his services on behalf of his client, is not entitled to a charging lien because he *could* have been discharged. *See Khudai*, 2023 WL 7174616, at *4 (recommending charging lien despite client's allegations of counsel's misconduct); *Pet. of Rosenman Colin Freund Lewis & Cohen*, 600 F. Supp. 527, 533 (S.D.N.Y. 1984) ("Because Mrs. Richard has not presented any evidence of dismissal prior to the completion of the underlying action, she may not seek to avoid liability on the grounds that Rosenman was dismissed, with or without cause."). Accordingly, plaintiff's request for discovery into "Glas' behavior toward Plaintiff" and "Glas' qualifications to represent a client in a

services for which he has been retained, is entitled to the lien protections of the Judiciary Law. *See Smith v. Home Depot U.S.A.*, No. 20-CV-4125, 2024 WL 3851926, at *3 (E.D.N.Y. Aug. 16, 2024) (finding counsel, who participated in settlement conference and had not been terminated, entitled to charging lien); *Khudai*, 2023 WL 7174616, at *3 (recommending granting charging lien to attorney who reached a settlement in principle even though counsel later withdrew); *Villar v. City of New York*, 546 F. Supp. 3d 280, 295 (S.D.N.Y. 2021) (imposing charging lien where case was closed and counsel's services were substantially completed). In these circumstances, attorneys are entitled to charging liens as long as they neither withdrew without "good cause," nor were discharged for "good cause." *Smith*, 2024 WL 3851926, at *2; *see Koury*, 2003 WL 21279441, at *2 ("an attorney discharged for cause may not claim a charging lien"); *Pet. of Rosenman Colin*, 600 F. Supp. at 533. "The prerequisites to the creation of a charging lien are well-settled; as a result of the attorney's efforts, (1) the client must assert a claim, (2) which can result in proceeds (3) payable to or for the benefit of the client." *Luca v. Giaccone*, No. 16-CV-4975, 2017 WL 3669614, at *4 (E.D.N.Y. Aug. 24, 2017) (internal quotations marks and citation omitted). Here, it is undisputed that Glas asserted a claim on behalf of plaintiff, which resulted in the settlement funds. Glas has established his entitlement to a charging lien.

B.    Escrowed Funds are Subject to Section 475

Plaintiff further argues that Glas is not entitled to the protections of section 475 because Glas "is fully secured" by a portion of the settlement funds being held in escrow. *See* Pl. Opp. Mem. at 1-2; Pl. Opp. ¶ 5. However, section 475 provides a "lien in all cases, and not merely where the client fails to provide some other form of security or protection, and the courts cannot themselves substitute another form of protection for that provided in the statute." *Itar-Tass Russian*

---

RICO case" (Pl. Opp. Mem. at 4) is unnecessary and unwarranted under the circumstances. *See Koury v. United Tribes of African News, Inc.*, No. 02-CV-23, 2003 WL 21279441, at *2 (S.D.N.Y. June 4, 2003) ("the circumstances of Flamm's departure are irrelevant because Flamm's obligation to the plaintiffs had already ceased at the time of any resignation or discharge").

*News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 453 (2d Cir 1998).  The charging lien attached

upon commencement of the action, not at the time of the settlement.  *See Khudai*, 2023 WL

7174616, at *3.  Glas effectively had a security interest in any favorable outcome of the litigation

from the outset.  *See id.*  Even though Glas' charging lien attaches to funds held in escrow, section

475 still applies.  *See Luca*, 2017 WL 3669614, at *4 (finding that counsel had charging lien on

proceeds "now being held in 'the Escrow Settlement Fund'").

      C.   <u>Federal Court Venue and Subject Matter Jurisdiction</u>

     Plaintiff further contends that New York state courts "are the sole courts where this dispute

can be resolved."  Pl. Opp. Mem. at 2.  On the contrary, the Second Circuit has found that such

liens are enforceable in federal courts.  *See Itar-Tass Russian News Agency*, 140 F.3d at 449 ("the

Second Circuit has long recognized that the lien created by section 475 . . . is enforceable in federal

courts"); *Yu*, 2024 WL 1259427, at *2; *Minott v. Google LLC*, No. 24-CV-1674, 2024 WL

3518525, at *2 (S.D.N.Y. July 24, 2024).

     Plaintiff argues that the Court lacks subject matter jurisdiction over the motion because Glas

and plaintiff are both citizens of New York and there is no federal question at issue.  Pl. Opp. Mem.

at 2.  Although plaintiff is correct that a federal court's "jurisdiction to hear fee disputes and lien

claims between litigants and their attorneys" is supplemental, the Second Circuit has held that "the

discretion to decline supplemental jurisdiction is available only if founded upon an enumerated

category of" 28 U.S.C. § 1367(c)(1)-(4).[5]  *See Itar–Tass Russian News Agency*, 140 F.3d at 448.

These categories do not apply here.[6]  Indeed, the Second Circuit has held, "in an unbroken line of

_____

[5] The district courts may decline to exercise supplemental jurisdiction over a claim under
subsection (a) if—(1) the claim raises a novel or complex issue of State law; (2) the claim
substantially predominates over the claim or claims over which the district court has original
jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28
U.S.C. § 1367(c).

[6] Glas filed his motion to establish a charging lien on March 14, 2024.  *See* Dkt. 165.  The claims

cases," that a court has supplemental jurisdiction over a fee dispute between a party and its attorneys because it shares a common nucleus of operative fact. *See Shukla v. Sharma*, 586 F. App'x 752, 753–54 (2d Cir. 2014) (holding that district court properly found supplemental jurisdiction over fee dispute); *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999) (same); *Itar-Tass Russian News Agency*, 140 F.3d at 445-48. Even if any of the discretionary factors applied, given that the dispute between plaintiff and Glas relates to the settlement of the main action in its entirety, and exercising supplemental jurisdiction would preserve judicial resources, these considerations further counsel in favor of exercising supplemental jurisdiction over the instant dispute. *See Alderman*, 169 F.3d at 102 (recognizing that court "adjudicated the underlying suit regarding wrongful death damages and was already familiar with the relevant facts and legal issues").

Plaintiff further contends that the Court should allow plaintiff to "conduct discovery" and have this issue presented before a "jury." Pl. Opp. Mem. at 4. However, "[i]n the context of both attorneys' liens and other liens, such actions have repeatedly been regarded as equitable in nature so that no jury right attaches." *Pet. of Rosenman & Colin*, 850 F.2d 57, 60 (2d Cir. 1988); *see Louima v. City of New York*, No. 98-CV-5083, 2004 WL 2359943, at *7 n.6 (E.D.N.Y. Oct. 5, 2004) ("Since this dispute arises in the context of T & F's right to enforce a charging lien under N.Y. Jud. Law § 475, it is considered an equitable action to which no right to a jury trial attaches."), *aff'd sub nom. Roper-Simpson v. Scheck*, 163 F. App'x 70 (2d Cir. 2006).

D.    Amount of the Charging Lien

Having rejected plaintiff's objections to the Court's authority to adjudicate the instant motion and Glas' entitlement to a charging lien, the Court now determines the amount of the charging lien. Glas contends that pursuant to the terms of the unsigned retainer agreement, Glas

---

over which the Court had original jurisdiction were dismissed thereafter, on May 6, 2024.

should be paid "one-third of the proceeds from the settlement reached with the Feldman [D]efendants" or $158,333. *See* Glas Mem. at 6 & n.1, Dkt. 165-1. Plaintiff argues that the amount of the lien should be one-third of the amount recovered, less expenses incurred. *See* Pl. Opp. Mem. at 5; Pl. Opp. ¶ 6; Hitrinov Cert. ¶ 19, Dkt. 179-2 ("It was always agreed that Plaintiff would advance the expenses until the final resolution of the claims against the Feldman Defendants, at which time the expenses would be deducted from the proceeds before the computation of the 1/3 legal fee."). The Court agrees with Glas for the reasons set forth below.

Where, as here, "the attorney had already completed services, . . . then the attorney's compensation is determined according to the attorney-client contract." *Villar*, 546 F. Supp. 3d at 295; *see Smith*, 2024 WL 3851926, at *3; *Pet. of Rosenman*, 600 F. Supp. at 533 ("where there has been no discharge, the contract between attorney and client must govern, absent evidence of fraud, deceit, overreaching, or undue influence."). The compensation terms of any retainer agreement, therefore, must be enforced. *See Koury*, 2003 WL 21279441, at *2; *Joseph Brenner Assocs., Inc. v. Starmaker Ent., Inc.*, No. 91-CV-4128, 1995 WL 271741, at *2 (S.D.N.Y. May 9, 1995), *aff'd*, 82 F.3d 55 (2d Cir. 1996).

Courts have enforced unsigned retainer agreements if objective evidence establishes the parties' agreement to the terms. *See Kimm v. Kyu Sung Cho*, 706 F. App'x 1, 2 (2d Cir. 2017); *Flores v. Lower E. Side Serv. Ctr., Inc.*, 4 N.Y.3d 363, 368-39 (2005). For example, absent a signed contract, partial performance by one party and acceptance of such performance by the other party can satisfy that requirement. *See Kimm*, 706 F. App'x at 3; *Hong v. Mommy's Jamaican Mkt. Corp.*, No. 20-CV-9612, 2024 WL 3824394, at *8 (S.D.N.Y. Aug. 14, 2024).

Here, Glas represented plaintiff throughout the litigation and plaintiff accepted Glas' representation without objection. *See* Pl. Opp. Mem. at 1 ("Glas was the attorney of record representing Plaintiff from the commencement of this action through the settlement with or

voluntary dismissal of all defendants."). When plaintiff reached a settlement with other defendants, plaintiff paid Glas one-third of the proceeds without deduction for expenses. *See* Glas Cert. ¶¶ 10, 11; Hitrinov Cert. ¶¶ 25-26, 29. The parties' conduct manifested their consent to the terms of the unsigned retainer agreement. *See Kimm*, 706 F. App'x at 3 (affirming summary judgment in favor of attorney for breach of unsigned retainer agreement); *Hong*, 2024 WL 3824394, at *8 (finding contract formed when client paid $5000 that attorney deposited); *Joseph Brenner*, 1995 WL 271741, at *2 (enforcing retaining lien with no written retainer agreement). In addition, in response to receiving a copy of the retainer agreement from Glas, Hitrinov expressly stated, "I agree in principle." Dkt. 165-3 at ECF page 2. The only issues Hitrinov raised for further discussion were the "scope of allegations, requested recovery amount, venue [and] defending parties." *Id.* Plaintiff, through Hitrinov, did not object to the agreement's provisions regarding Glas' compensation.

Now, plaintiff "asserts there was an agreement between it and Glas, which provided that the fee would be one-third of all net recoveries, which was defined to be all recoveries subtracting all expenses." Pl. Opp. Mem. at 1-2. However, plaintiff has not provided any evidence to support such an agreement beyond the self-serving declaration of Hitrinov. Hitrinov states as follows: "[b]etween May 6, 2021 and June 2, 2021, I advised Glas of this and he verbally agreed that his fee would be computed after the costs were deducted from the total amount recovered." Hitrinov Cert. ¶ 6. Hitrinov further claims as follows: "[a]fter the complaint was filed, I presented Glas with a revised Terms of Engagement which provided that the 1/3 contingency fee will be 1/3 of all net recoveries obtained . . . . Glas told me he agreed to the revised Terms of Engagement, that he would correct it with better wording, sign it and send it to me. He never signed it." *Id.* ¶¶ 11-12. According to plaintiff, "[i]t was always agreed that Plaintiff would advance the expenses until the final resolution of the claims against the Feldman Defendants, at which time the expenses would be deducted from the proceeds before the computation of the 1/3 legal fee." *Id.* ¶ 19.

In reply, Glas denies ever having any communication with Hitrinov about calculating his contingency fee after deducting costs.  *See* Reply Glas Cert. ¶ 2, Dkt. 180-1.  Glas expressly denies that he "agreed to have [his] fee computed after deducting the costs."  *Id.*  Glas also denies that Hitrinov ever presented him with the "revised Terms of Engagement" that plaintiff attached to its opposition papers.  *See id.* ¶ 5.  There is no corroborating evidence that Hitrinov ever objected to the costs provision of the retainer agreement that Glas sent him twice, and no dispute that Glas continued to provide services that plaintiff accepted.  In addition, even if Hitrinov sent Glas the "revised Terms of Engagement," there is no corroborating evidence that Glas agreed to those terms. In fact, the original retainer agreement provides that any modifications must be "reduced to writing."  Dkt. 165-3 at ECF page 5.

Under New York law, "a written agreement that expressly states it can be modified only in writing cannot be modified orally."  *Towers Charter & Marine Corp. v. Cadillac Ins. Co.*, 894 F.2d 516, 522 (2d Cir. 1990); *see Prospect Cap. Corp. v. Credito Real USA Fin. LLC*, 702 F. Supp. 3d 178, 190 (S.D.N.Y. 2023) ("[n]o oral modification clause[s]" are enforceable); *see also* N.Y. Gen. Oblig. L. § 15-301 (McKinney 2007) ("A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.").  However, "[e]ven where a contract specifically contains . . . a provision that it cannot be modified without a writing, a waiver may be established by the parties' course of conduct and actual performance."  *McGuire v. McGuire*, 153 N.Y.S.3d 280, 286 (4th Dep't 2021); *see HOV Servs., Inc. v. ASG Techs. Grp., Inc.*, 183 N.Y.S.3d 66 (1st Dep't 2023).  The party claiming the modification must show that the parties engaged in conduct incompatible with the terms of the original agreement as written, and conduct only consistent with the oral modification.  *See Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07-CV-

11

432, 2008 WL 650403, at *9 (S.D.N.Y. Mar. 7, 2008); *see also Rose v. Spa Realty Assocs.*, 42 N.Y.2d 338, 343-44 (1977).

Applying the standards set forth above, nothing in the record before the Court suggests that plaintiff and Glas acted in accordance with any alleged oral modification or belief that the retainer agreement had been orally modified. During the course of Glas' representation, plaintiff paid most of the costs of the litigation, and as to the remainder, plaintiff reimbursed Glas for all expenses that Glas incurred in connection with this action. *See* Glas Cert. ¶¶ 9-11; Hitrinov Cert. ¶¶ 36-37. Tellingly, when plaintiff entered into settlements with defendants Aleksander Pisman, Odil Iskandarov, and Javid Jafarov, Glas received one-third of the settlement proceeds. *See* Glas Cert. ¶¶ 10, 11; Hitrinov Cert. ¶¶ 25-26, 29. Hitrinov's self-serving declaration attesting to an oral modification made between plaintiff and Glas does not provide the specificity necessary to establish an issue of fact where a fully integrated agreement is at issue. In addition, plaintiff allegedly sending a revised "Terms of Engagement" with no response from Glas does not constitute a written modification. *See Prospect Cap.*, 702 F. Supp. 3d at 192 ("To the extent defendant is now arguing that its unilateral sending of an email plus plaintiff's silence and continued evaluation of the transaction constitutes a binding written modification, that is completely without merit.").

In the absence of any evidence corroborating Hitrinov's declaration, and based on the plain language of the unsigned retainer agreement, Glas is entitled to one-third of the proceeds of the settlement with the Feldman Defendants, before the deduction of expenses. The agreement provides: "If there are recoveries, our fee will by one-third (1/3) of such recoveries. All costs and expenses associated with this work will be borne by [the client]." *See* Retainer Agreement, Dkt. 165-3 at 3. Indeed, as discussed above, the parties' conduct has been consistent with the terms of this retainer agreement. *See Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 784 (2d Cir. 2003) ("while CIS's course of conduct was at all times consistent with the terms of the Agreement,

Dallas's own conduct was inconsistent with the belief that the Agreement had been modified").

The Court, therefore, directs plaintiff to pay attorney's fees to Glas in the amount of $158,333 from the proceeds of the Feldman Defendants' settlement, pursuant to the parties' retainer agreement. Gary Krim ("Krim"), counsel for plaintiff, shall promptly release funds being held in escrow to Glas.

Finally, by letter dated September 25, 2024, Glas requested that the Court direct Krim to notify him every month when settlement payments are made and the attorney's fees portion is deposited into counsel's escrow account. *See* Mot. to Compel, Dkt. 181. The Court denies this request as moot since the Court directs Krim to release promptly the funds held in escrow to Glas. Further, plaintiff shall promptly forward to Glas one-third of any future settlement payments (reflecting the attorney's fees portion of the payment) made by the Feldman Defendants.

## Conclusion

For the foregoing reasons, the Court grants Glas' motion for a charging lien. Accordingly, Glas is entitled to a charging lien in the amount of one-third of the proceeds of the settlement with the Feldman Defendants. Krim shall promptly release the funds held in escrow and the Court orders plaintiff to pay Glas one-third of each future payment received from the Feldman Defendants pursuant to the parties' settlement agreement.

**SO ORDERED**

Dated: Brooklyn, New York
       March 12, 2025

                                    s/ James R. Cho
                                    James R. Cho
                                    United States Magistrate Judge